IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DIMITAR PETLECHKOV,** *Plaintiff* | |
| v. | **CIVIL ACTION NO. 1:24-CV-00658-JPB** |
| **JOSHUA PAUL GILMER, AMAR BALIKAI, JESSICA M. ALEXANDER, REALM CONDOMINIUM ASSOCIATION, INC., FIRSTSERVICE RESIDENTIAL GEORGIA, INC.,** *Defendants* | **JURY DEMAND** |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Introduction

1. This is a diversity action for breach of fiduciaty duty, fraud, negligent misrepresentation, and violations of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act, O.C.G.A. § 16-14-4.

The Parties

2. Plaintiff is a citizen and resident of the Republic of Bulgaria.

3. At all times material to this complaint, defendant JOSHUA PAUL GILMER was employed as an on site property manager by defendant FIRSTSERVICE

1

RESIDENTIAL GEORGIA, INC. Gilmer is a citizen and resident of Fulton County, City of Atlanta, Georgia.

4. At all times material to this complaint, defendant AMAR BALIKAI was and is a Board member sitting on the Board of Directors of defendant REALM CONDOMINIUM ASSOCIATION, INC. Balikai is a citizen and resident of Fulton County, City of Atlanta, Georgia.

5. At all times material to this complaint, defendant JESSICA M. ALEXANDER was and is a Board member sitting on the Board of Directors of defendant REALM CONDOMINIUM ASSOCIATION, INC. Alexander is a citizen and resident of Fulton County, Atlanta, Georgia.

6. Defendant REALM CONDOMINIUM ASSOCIATION, INC. is a Georgia non-profit corporation with its headquarters and principal office in Fulton County, City of Atlanta, GA.

7. Defendant FIRSTSERVICE RESIDENTIAL GEORGIA, INC. is a Georgia for-profit corporation with its headquarters and principal place of business in Fulton County, Atlanta, GA.

## Jurisdiction and Venue

8. The amount in controversy is in excess of $75,000 exclusive of interest and costs. The court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332(a)(2).

9. Venue is proper in this district by virtue of 28 U.S.C. § 1391(b)(1) because at least one defendant resides in this district and all defendants are Georgia residents. Venue is also proper under § 1391(b)(2) because a substantial part of the defendants' fraudulent conduct and predicate acts giving rise to the various claims asserted herein occurred in Fulton County, Atlanta, Georgia.

## Factual Allegations

10. The Realm of Buckhead or Realm Condominiums (hereinafter "Realm") is a residential high-rise condominium building located in Fulton County, Atlanta, GA consisting of 406 individual units.

11. As relevant here, all 406 residential units at Realm are subject to the Declaration of Condominium for Realm Residential Condominium.

12. Defendant REALM CONDOMINIUM ASSOCIATION, INC. (hereinafter "Association") is charged with enforcing the covenants contained in the Declaration through the powers afforded therein as well as the Association's Bylaws and its Articles of Incorporation.

13. The Association has contracted with defendant FIRSTSERVICE RESIDENTIAL GEORGIA, INC. for on-site management of the Realm building, including enforcement of the Declaration. Defendant GILMER was the on-site property manager from 2016 through some time in 2023.

14. Every owner of a unit at Realm is a mandatory member of the Association. Where the owner is a legal entity, it designates a natural person as a member. Plaintiff was a designated representative for ATL Loft LLC.

15. The Realm Declaration of Condominium prohibits leasing of condominium units except if the owner receives a leasing permit. As relevant to this action, the Declaration defines leasing as "regular, exclusive occupancy of a Unit by any Person other than the Owner." In turn, the term owner is defined as "the record titleholder of a Unit." Finally, person is defined as "any individual, corporation, firm, association, partnership, trust, or other legal entity."

16. If an owner is granted a leasing permit, he can only lease out his unit on specific terms to be approved by the Association. For example, one such condition is that the owner must furnish a copy of a proposed lease agreement to the Association's Board of Directors at least 7 days before the lease agreement is executed, so the Board can "approve or disapprove the form of said lease."

17. The Declaration further requires that "[a]ll leases shall be in writing," that only entire units may be leased and that "[a]ll leases must be for an initial term of not less than one (1) year." Finally, the Declaration requires that "[w]ithin ten (10) days after executing a lease agreement for the lease of a

Unit, the Owner shall provide the Board with a copy of the lease and the name of the lessee and all other people occupying the Unit."

18. Significantly, the Declaration has a carve-out/exception for owners who are not natural persons, but instead legal entities. As relevant here, the Declaration provides that "[i]f an Owner of a Unit is a corporation, partnership, trust or other legal entity not being a natural person, the entity shall designate in writing to the Board of Directors the name(s) of the person(s) who will occupy the Unit." The Declaration goes on: "The designated person(s) to occupy the Unit may not be changed more frequently than once every six (6) months."

19. In summary, a record owner who is a natural person must obtain a leasing permit from the Association if his unit will be exclusively occupied by someone other than the same record owner. And if granted such a permit, the owner must have a lease agreement with a minimum duration/term of 1 year reviewed and approved by the Board of Directors for the Association.

20. On the other hand, if an owner is a legal entity, such as a corporation or LLC – such owner not being a natural person who can physically occupy a unit – the entity can designate one or more natural persons as occupants to the Board and can change the occupants once every 6 months.

21. In other words, a legal entity does not need a leasing permit, a lease agreement, or occupancy for a mininum term of 1 year. Instead, occupancy of a unit owned by a legal entity through its designated natural persons is not considered "leasing" for purposes of the Declaration.

22. The above covenants of the Declaration can be amended if a majority of the owners wish to do so. "[T]his Declaration may be amended by the affirmative vote [or] written consent ... of the members of the Association holding two-thirds (2/3) of the Total Association Vote."

23. Legal counsel for the Association had advised the Board of Directors they needed to pass an amendment to the Declaration by majority vote of all association members if they wished to restrict who legal entities could designate as occupants (e.g. by limiting eligible occupants to corporate shareholders, LLC members, partners in a partnership, etc.), or what constitutes leasing for purposes of the Declaration (i.e. when a legal entity is considered to be leasing a unit – e.g., when it charges monthly rent – versus not considered leasing if it's gratuitous).

24. The Association, its Board of Directors and its legal counsel were well aware that they could not redefine what constitutes leasing or restrict occupancy designation eligibility without formally passing an amendment to the

Declaration. They also knew that passing an amendment would be extremely difficult due to the inability to collect the required number of votes.

25. Between November 2014 and the present, plaintiff has been a beneficial owner of Realm condominium units 2515 and 2908 through ATL Loft LLC.

26. Between January 2015 and September 2019, plaintiff designated various occupants for different periods of occupancy of 6 months or longer for thw two units he beneficially owned. The Board of Directors of the Association took no issue with plaintiff's designations for occupancy.

27. On or about October 2019, there was a change in leadership at the Association and defendants BALIKAI and ALEXANDER were voted in and became members of the Board of Directors.

28. When plaintiff attempted to designate new occupants in late October 2019, his requests were rejected. Writing for the Board, including Board members BALIKAI and ALEXANDER, defendant GILMER emailed the following on October 21, 2019:

29. "The Board is wanting us to come down extremely hard on any Unit (including LLCs) without rental permits ... Even Units with LLC's we cannot put anyone into the system that are not on the deed. If you want to take the risk on putting the person on the deed that is up to you but we cant

put any non-owners in the building that are not Owners any longer."

30. When pressed for an explanation in light of the Declaration's designation clause, GILMER wrote as follows on October 22, 2019: "No…the Board is adamant now. The people need to be on the deed or they cannot live here in a Unit without a leasing permit."

31. On or about October 28, 2019, plaintiff's mother and brother met with defendant GILMER at his office to discuss what had changed. GILMER advised that the Association had amended its Declaration and designation of occupants for units owned by legal entities was no longer allowed. GILMER further advised that the amendment had passed by 2/3 majority vote.

32. In reality, however, an amendment had never passed, by majority vote or otherwise. Instead, GILMER, acting at the direction of the Board of Directors and its member-defendants BALIKAI and ALEXANDER, fabricated this story to prevent plaintiff from designating new occupants.

33. Starting on or about October 30, 2019, defendants forced plaintiff's new occupants out of the units by threatening them and plaintiff with fines as well as disabling building access devices, lobby/elevator access, or otherwise making it known that they could not continue to reside there.

34. The above actions by all of the named defendants deprived plaintiff of his

right to lawful use and enjoyment of the premises he beneficially owned as expressly provided for in the Declaration.

35. Throughout, the defendants have acted in bad faith, have been stubbornly litigious, and have caused the plaintiff unnecessary trouble and expense.

<u>Count I – Breach of Fiduciary Duty (Against the individual defendants)</u>

36. Plaintiff re-alleges and re-incorporates by reference paragraphs 10 – 35 as if fully set forth herein.

37. Defendants BALIKAI and ALEXANDER owed a fiduciary duty of utmost good faith to plaintiff by virtue of his membership in the Association, as would be the case between any shareholder in a nonprofit corporation and its Board of Directors, such relationship being characterized as confidential and/or fiduciary. Defendant GILMER is liable to plaintiff due to his position as the on site property manager, hired by the Board as its agent to execute its directives on the ground.

38. As relevant here, the individual defendants were required to enforce existing covenants in the Declaration of Condominium, but they could not invent new, non-existent provisions or lie about the passage of amendments to the Declaration which did not in reality pass. When they did the latter, these defendants breached their fiduciary obligations to plaintiff.

39. As a direct and proximate result of these breaches, plaintiff suffered damages because he was prevented from lawfully using and enjoying his properties as authorized by the Declaration.

### Count II – Fraud (Against all defendants)

40. Plaintiff re-alleges and re-incorporates by reference ¶¶ 10 – 35 and 37 as if fully set forth herein.

41. Acting at the direction of Board-member defendants BALIKAI and ALEXANDER, defendant GILMER falsely represented to plaintiff and/or his representatives on multiple occasions – including emails sent October 21 and 22, 2019 and at an in person meeting held on October 28, 2019 – that the Association had lawfully amended its Declaration and removed the option afforded therein for legal entities to designate occupants for units owned by such entities, and that instead a leasing permit was needed for occupancy. These misrepresentations were material.

42. The defendants knew that in reality no such amendment had passed because there weren't enough votes to pass it. Nonetheless, the defendants lied and misrepresented the state of affairs at the Association with the express intention to induce plaintiff to act or refrain from acting.

43. Specifically, defendants induced plaintiff to cooperate with the Board's

desired removal of occupants from plaintiff's units, and to stop seeking or attempting to place new occupants in said units in the future. In other words, defendants did this to prevent plaintiff from exercising his right of lawful use of his condominiums as the original, unamended Declaration afforded.

44. Plaintiff was justified in relying on defendants' false representations because – as an automatic member of the Association by virtue of the deeds of ownership – the Board of Directors owed plaintiff a duty of utmost good faith due to the confidential and fiduciary relationship of mutual confidence which exists between members of the Association, a non-profit corporation, and its Board of Directors.

45. As a direct and proximate result of defendants' actions, plaintiff was injured and suffered damages. Specifically, plaintiff was deprived of the opportunity and right to lawful use and enjoyment of the premises he beneficially owned in the manner afforded under the Declaration, i.e. with the unrestricted right to be able to place any occupant whomsoever plaintiff wishes to occupy his units, so long as occupants are not changed more than once every 6 months.

46. Corporate defendants REALM CONDOMINIUM ASSOCIATION, INC. and FIRSTSERVICE RESIDENTIAL GEORGIA, INC. are vicariously liable for the actions of the individual defendants BALIKAI, ALEXANDER,

and GILMER under a theory of respondeat superior, as the latter defendants engaged in their fraudulent actions within the scope and in furtherance of the corporate defendants' business – to put an end to a perceived leasing restriction loophole (the occupancy designation clause available under the Declaration to owners who are legal entities).

<u>Count III – Negligent Misrepresentation (Against all defendants)</u>

47. Plaintiff re-alleges and re-incorporates by reference ¶¶ 10-35, 37, and 44-46 as if fully set forth herein.

48. The individual defendants negligently supplied false information to plaintiff: that the Declaration had been amended and that he could no longer designate occupants for his units without a leasing permit. This supply of false information to plaintiff was foreseeable by the defendants.

<u>Count IV – Georgia RICO Act Violations (Against all defendants)</u>
[O.C.G.A. §§ 16-14-4, 16-14-6(c)]

49. Plaintiff re-alleges and re-incorporates by reference ¶¶ 10-34 and 44-45 as if fully set forth herein.

50. The Georgia General Assembly passed the Racketeer Influenced and Corrupt Organizations (RICO) Act "to provide compensation to persons injured or aggrieved by ... an interrelated pattern of criminal activity motivated by or the effect of which is" economic injury. § 16-14-2(b).

51. All of the named defendants are "person[s]" with the meaning of § 16-14-4. Further, all of the named defendants collectively constitute the RICO enterprise as an association in fact. See §§ 16-14-4, 16-14-3(3). (Alternatively, the individual defendants constitute the RICO enterprise).

52. The purpose of the RICO enterprise was to create, effectuate and enforce an unwritten, illegal, and non-existent amendment to the Declaration in order to close a perceived leasing loophole after the defendants failed to secure a majority vote to pass the desired amendment lawfully.

53. Further, all of the defendants worked together toward a common goal – to target plaintiff and inflict economic injury on him through illegal means. The defendants accomplished their goal through a pattern of racketeering activity. Specifically, the defendants committed two predicate acts of wire fraud. *See* O.C.G.A. §§ 16-14-4; 16-14-3(4)(A), (5)(C); 18 U.S.C. §§ 1961(1)(B), 1343. These criminal acts were interrelated and constitute a pattern of racketeering activity.

54. In perpetrating their scheme to defraud, use of the wires was knowing and foreseeable by the defendants and they caused interstate wires to be sent for purposes of executing said scheme.

55. The purpose of the scheme to defraud was to harm plaintiff by depriving him

of his right to lawful use and enjoyment of units he benefically owned in the manner afforded under the Declaration. Thus, plaintiff was deprived of the opportunity to earn income from the properties.

56. At the direction of defendants BALIKAI and ALEXANDER, defendant GILMER sent two wires (emails) to plaintiff – on October 21 and 22, 2019 – for purposes of executing this scheme and in furtherance thereof. These emails contained false and material misrepresentations of fact – that the Declaration had been lawfully amended by majority vote such that legal entities were no longer allowed to designate any natural person they wished to be an occupant of a unit. In reality, that had never happened and the designation clause was still available to legal entities.

57. Although defendant GILMER sent the above emails, defendants BALIKAI and ALEXANDER are directly liable because they "caused" those emails to be sent – the emails were sent per their instructions and at their direction. In sum, all three defendants engaged in a pattern of racketeering by committing two acts of wire fraud each – by sending or causing wires to be sent.

58. Alternatively, all of the defendants violated § 16-14-4(a) by engaging in a pattern of racketeering activity to "acquire or maintain, directly or indirectly, ... control of ... real property." The defendants controlled who can and can't

occupy plaintiff's units by illegally excluding every single person (except plaintiff) from being eligible to occupy said units absent a leasing permit.

Prayer for Relief

59. WHEREFORE, plaintiff prays the jury award him compensatory damages for loss of use of his properties (including, but not limited to, lost rents and profits) from October 30, 2019 through the date of entry of judgment.

60. Then, plaintiff prays the jury award punitive damages against all defendants pursuant to §§ 51-12-5.1 and 16-14-6(c) in such amount as it deems just.

61. Plaintiff further prays the jury award attorney's fees pursuant to § 13-6-11.

62. Finally, plaintiff prays the Court or jury treble all of the above damages, and award him his costs of investigation and litigation of this action, including attorney's fees at the trial level and on appeal, as required by § 16-14-6(c).

63. Plaintiff demands this cause be tried before a jury of twelve with respect to all triable issues. *See* Fed.R.Cv.P. 38(a)-(c), 39(a); O.C.G.A. § 16-14-6(c).

Dated: May 13, 2025                              Respectfully submitted,

                                                 *s/ Dimitar Petlechkov*

                                                 Dimitar Petlechkov
                                                 P.O. Box 13272
                                                 Atlanta, GA 30324
                                                 Tel. 404-954-0890
                                                 9249617@gmail.com
                                                 Plaintiff, *Pro Se*